No. 21-10806

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

STATE OF TEXAS,
STATE OF MISSOURI,

Plaintiffs-Appellees,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United States, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court for the Northern District of Texas, Case No. 2:21-cv-00067-Z

# SUGGESTION OF MOOTNESS AND OPPOSED MOTION TO VACATE THE JUDGMENT BELOW AND REMAND FOR FURTHER PROCEEDINGS


BRIAN M. BOYNTON
*Acting Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
BRIAN C. WARD
*Senior Litigation Counsel*
JOSEPH A. DARROW
*Trial Attorney*

## INTRODUCTION

Because recent developments have rendered Appellees' claims in this case moot, Appellants respectfully request that the Court vacate the district court's August 13, 2021 judgment and injunction and remand this case. In the alternative, the Court should remand the case in part and hold this appeal in abeyance.[1]

This case concerns the Migrant Protection Protocols (MPP), a former Department of Homeland Security (DHS) policy that was applied to certain nationals of foreign countries who had transited through Mexico from a third country to reach the United States land border. In promulgating MPP, DHS invoked its discretionary authority under 8 U.S.C. § 1225(b)(2)(C), which provides that the Secretary "may return" certain noncitizens "arriving on land ... from a foreign territory contiguous to the United States ... to that territory" pending resolution of their removal proceedings. Following the change in administration, the Acting Secretary temporarily suspended new enrollments in MPP. Then, after a comprehensive review, on June 1, 2021, the Secretary terminated MPP in a memorandum that explained his findings and conclusions. ROA.1684-90.

On August 13, 2021, the district court "permanently enjoined and restrained" DHS "from implementing or enforcing the June 1 Memorandum," which it "vacated in its entirety and remanded to DHS for further consideration." ROA.2970. Further,

[1] Plaintiffs oppose this motion.

the court issued a nationwide, permanent injunction requiring DHS "to enforce and implement MPP *in good faith* until such a time as it has been lawfully rescinded in compliance with the APA **and** until such a time as the federal government has sufficient detention capacity to detain all aliens subject to mandatory detention under Section [1225] without releasing any aliens *because of* a lack of detention resources." ROA.2970.

As the government has explained, the district court's order was wrong in multiple respects. Appellants' Br. 9-56; Reply Br. 3-27. Recent developments concerning MPP, however, have mooted Appellees' claims, and now require vacatur of the district court's judgment and permanent injunction, and remand. On October 29, 2021, Secretary Mayorkas issued a memorandum terminating MPP and superseding all prior memoranda relevant to MPP, including the June 1 memorandum that is the subject of this appeal, and a second memorandum explaining the basis for that decision.[2] *See* Termination of the Migrant Protection Protocols ("Termination Memorandum") (Ex. A); Explanation of the Decision to Terminate the Migrant Protection Protocols ("Explanatory Memorandum") (Ex. B).[3]

[2] The government informed the Court of DHS's intention to issue a new memorandum on September 29, 2021. Abeyance Motion at 1.

[3] The memoranda are also available here: https://www.dhs.gov/publication/migrant-protection-protocols-termination-memo.

The memoranda address all the issues the district court directed the government to consider on remand, ROA.2854-60, 2970, and thereby satisfies one of the court's conditions precedent to terminating MPP in its injunction. But even more relevant for present purposes, the October 29 memoranda moot Plaintiffs' claims under the Administrative Procedure Act (APA) and 8 U.S.C. § 1225 that the June 1 memorandum was arbitrary and capricious and exceeds statutory authority. That memorandum is no longer operative, and Plaintiffs' challenge to it no longer presents a live case or controversy that the federal courts can resolve. Because that mootness will prevent this Court's review of the district court's decision and order with respect to Appellees' APA and statutory claims, the government respectfully submits that this Court should vacate as moot the court's judgment and permanent injunction and remand this case. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950); *accord* Order, *Mayorkas v. Innovation Law Lab*, 19-1212 (U.S. June 21, 2021) (vacating order granting preliminary injunction of MPP when June 1 memorandum terminated MPP).

Vacatur is appropriate for the additional reason that the October 29 memoranda address the district court's reasoning and conclusions concerning Appellees' claim under 8 U.S.C. § 1225, which is intertwined with their APA claim, and contains new reasoning and explanation that impact that claim. Even if the new memorandum does not fully moot Appellees' claim that Section 1225 *mandates*

using MPP to return all applicants for admission to Mexico until DHS has sufficient resources to detain them, ROA.2960-62, principles of prudential mootness and judicial economy warrant vacating that portion of the decision and order below as well, as "it is clearly preferable as a general matter to review a set of claims in the context of an extant rather than a defunct rule …." *Ass'n of Am. Physicians & Surgeons v. Sebelius*, 746 F.3d 468, 473 (D.C. Cir. 2014).

In the alternative, should this Court not vacate the district court's judgment and permanent injunction, the government respectfully submits that, because Appellees' APA claim is clearly moot, a partial remand is appropriate. In that circumstance, this Court should vacate the district court's judgment and injunction insofar as it rests on Appellees' arbitrary-and-capricious claim, hold this appeal in abeyance insofar as it concerns Appellees' claim under Section 1225, and remand the case to the district court for consideration of any objections that Appellees wish to present to the Secretary's new memorandum. Put simply, judicial economy counsels in favor of this Court temporarily delaying its consideration of this case until the district court has addressed the effect of the Secretary's new memorandum.

## BACKGROUND

The Executive Branch has broad constitutional and statutory power over the administration and enforcement of the nation's immigration laws. Congress has also provided DHS with various overlapping tools to process inadmissible noncitizens,

including authority in 8 U.S.C. § 1225(b)(1) to initiate expedited removal proceedings against certain applicants for admission,[4] and to place noncitizens seeking admission into full removal proceedings held before an immigration judge under 8 U.S.C. § 1229a. *Id.* § 1225(b)(2)(A). The statute leaves to DHS's discretion whether to use expedited or full removal proceedings for noncitizens eligible for both. *See Matter of E-R-M- & L-R-M-*, 25 I.&N. Dec. 520, 523 (BIA 2011). When DHS places certain noncitizens into section 1229a proceedings, Congress has provided that, if the noncitizen is "arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States," the Secretary "may return the alien to that territory pending a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(C). DHS may also, within certain limits, choose between detaining and releasing applicants for admission pending their removal proceedings. *Id.* §§ 1182(d)(5), 1225(b)(2)(A), 1226(a).

On January 25, 2019, then-Secretary Nielsen instituted MPP, authorizing immigration officers to "exercis[e] [their] prosecutorial discretion regarding whether" to return to Mexico certain classes of noncitizens arriving from Mexico, and providing guidance for making that determination. *See* ROA.1834-36. Implementing MPP required the cooperation of Mexico, which permitted returned

---

[4] References to the Attorney General in § 1225 now mean the Secretary. 6 U.S.C. §§ 251, 552(d).

noncitizens to enter its borders, took a variety of steps to assist the United States, and made certain commitments to support individuals returned under the program. *Id.* In March 2020, however, most removal proceedings were suspended in light of the COVID-19 pandemic (including for noncitizens waiting in Mexico under MPP), and new enrollments in MPP dramatically decreased as many noncitizens encountered at the border were instead expelled under Title 42, *see* 42 U.S.C. §§ 265, 268, based on an order from the Centers for Disease Control and Prevention (CDC). ROA.1686, 1689.

On January 21, 2021, the Acting Secretary "suspend[ed] new enrollments in [MPP], pending further review of the program." ROA.2264. President Biden subsequently directed DHS "to promptly review and determine whether to terminate or modify [MPP]." Executive Order 14010, 86 Fed. Reg. 8267 (Feb 5, 2021). On June 1, 2021, the Secretary issued a memorandum terminating MPP. ROA.1684-90. Following the announcement, on the government's motion, the Supreme Court vacated a Ninth Circuit decision upholding a district court's nationwide preliminary injunction of MPP, as well as the district court order entering the preliminary injunction. The Supreme Court's order provides that: "The motion to vacate the judgment is granted. The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Ninth Circuit with instructions to direct the District Court to vacate as moot the April 8, 2019 order granting a preliminary injunction.

*See United States v. Munsingwear*, Inc., 340 U.S. 36 (1950).” Order, *Mayorkas v. Innovation Law Lab*, 19-1212 (June 21, 2021).

Meanwhile, on April 13, 2021, the States of Missouri and Texas filed this suit in the Northern District of Texas, seeking injunctive relief against the Secretary’s pause of new enrollment in and later the termination of MPP. On August 13, 2021, following a one-day bench trial, the district court issued a nationwide injunction requiring DHS “to enforce and implement MPP.” ROA.2970. The court concluded that the case is justiciable, ROA.2939-52; that the Secretary’s decision terminating MPP violated the APA, ROA.2952-60; that Section 1225(b)(2)(C) *requires* the use of MPP whenever until DHS has sufficient resources to detain all noncitizens subject to section 1225, ROA.2960-62; and that a nationwide injunction with monthly reporting requirements, rather than remand without vacatur, was appropriate, ROA.2963-71. The court’s nationwide injunction requires DHS “to enforce and implement MPP *in good faith* until such a time as it has been lawfully rescinded in compliance with the APA **and** until such a time as the federal government has sufficient detention capacity to detain all aliens subject to mandatory detention under Section [1225] without releasing any aliens *because of* a lack of detention resources.” ROA.2970. The court also vacated the memorandum “in its entirety and remanded to DHS for further consideration.” ROA.2970.

On October 29, 2021, the Secretary announced that, following the district court's remand, he had re-evaluated whether MPP should be continued, modified, or terminated, concluding that it should be terminated. Termination Memorandum 1-4. In reaching that decision, the Secretary reviewed anew the materials he considered as part of his prior termination decision; studied the multiple court decisions, filings, and declarations related to MPP; considered various DHS assessments of MPP; assessed relevant data regarding enrollments in MPP, encounters at the border, and outcomes in removal proceedings for MPP enrollees; reviewed news reports, Congressional testimony, reports from nongovernmental entities and other reliable, sources of information pertaining to conditions in Mexico; considered the impact of other government programs and policies concerning migration and the southern border and initiatives the Administration is undertaking or considering undertaking; and met with a broad and wide-ranging array of internal and external stakeholders, including officials from across the federal government working on border management, state and local elected officials across the border region, including from the States of Texas, California, Arizona, and New Mexico, border sheriffs and other local law enforcement officials, and representatives from multiple nonprofit organizations providing legal access and humanitarian aid across the southwest border. *Id.*; Explanatory Memorandum 1-38. In addition, the Secretary examined the considerations that the court found were omitted from his earlier

termination memorandum. *Id*. After carefully considering the arguments, evidence, and perspectives of all interested parties, the Secretary concluded that MPP or a modified version of it is not the best or preferred strategy for implementing the Administration's policy goals and that the benefits of MPP or a modified version of it are far outweighed by the costs of continuing to use the program. *Id.* The memorandum also "supersede[d] and rescind[ed] the June 1 memorandum, Secretary Nielsen's January 25, 2019 memorandum, and any other guidance or other documents prepared by the Department to implement MPP." Termination Memorandum 4.

## ARGUMENT

### I. The Judgement and Permanent Injunction Should Be Vacated and the Case Should be Remanded

A. Plaintiffs' Claims are Moot

Just as the Supreme Court determined in *Innovation Law Lab* with respect to the plaintiffs in that case, the Secretary's October 29, 2021 decision to terminate MPP has mooted Plaintiffs' claims that are the subject of this appeal. Plaintiffs sought the permanent injunction at issue here based on claims that they were harmed by DHS's June 1 termination of MPP. ROA.1123-25. But those claimed harms are irrelevant now that the Secretary has decided, following the district court's remand, to terminate MPP in a new decision memorandum and to rescind all prior memoranda addressing MPP. The Secretary's decision to stop using MPP in an

entirely new agency action means that neither Plaintiffs nor any other potential litigant has any basis to defend the district court's decision and order, or the permanent injunction, with respect to the claims challenging a now-defunct agency action. *See, e.g.*, *Spell v. Edwards*, 962 F.3d 175, 178-79 (5th Cir. 2020) ("A matter is moot when" government action "has expired or been repealed").

Accordingly, Plaintiffs no longer have any personal stake in their claims. *See* Order, *Mayorkas v. Innovation Law Lab*, 19-1212 (June 21, 2021). Plaintiffs claim that they were harmed by the June 1 memorandum's termination of MPP without considering the putative harms ending MPP caused them. ROA.1123-25. But Plaintiffs cannot assert that interest now given that the October 29 memoranda supersede and replace the June 1 memorandum and address those very issues. Termination Memorandum 1-4; Explanatory Memorandum 1-38. Because Plaintiffs no longer have any live stake in preventing the government from implementing the now superseded June 1 memorandum, no federal court has authority under Article III to adjudicate Plaintiffs' entitlement to that injunction, and the injunction must be dissolved. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the litigation at any point during litigation, the action can no longer proceed and must be dismissed as moot."); *accord, e.g.*, *Spell*, 962 F.3d at 178-79; *Save Our Cumberland Mountains*, *Inc. v. Clark*, 725 F.2d 1422, 1432 n.27 (D.C. Cir. 1984)

("There is no question that a case can be mooted by promulgation of new regulations or by amendment or revocation of old regulations."); *Nat. Res. Def. Council, Inc. v. U. S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982) ("[c]orrective action by an agency is one type of subsequent development that can moot a previously justiciable issue"); *Sannon v. U.S.*, 631 F.2d 1247, 1250–51 (5th Cir. 1980) (promulgation of new regulations may render moot "what was once a viable case").

In addition, as explained below, the memoranda also moot Plaintiffs' section 1225 claim. That claim is inextricably tied to the June 1 memorandum. *See* Dkt. 48 (amended complaint), ¶¶ 130-35 (contending that the "June 1 memorandum" will cause the government to "unlawfully fail to detain illegal aliens, and unlawfully release illegal aliens into the interior of the United States" and thus "violate[] 8 U.S.C. § 1225"). But that memorandum no longer exists, and so any challenge to it is now moot. *See, e.g.*, *Spell*, 962 F.3d at 178-79. The October 29 memoranda address the district court's reasoning and conclusions concerning section 1225 and the government's detention capacity, and so eliminates the basis for the court's conclusions with respect to section 1225 that formed the basis for both its APA and section 1225 rulings. *See, e.g.*, *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) ("By eliminating the issues upon which this case is based, adoption of the new rule has rendered the appeal moot.").

B. The Court Should Vacate the Judgment and Injunction and Remand

Because the mootness of Plaintiffs' claimed entitlement to a permanent injunction as to the APA and section 1225 claims will prevent this Court from reviewing the district court's erroneous decision to issue the injunction on that basis, this Court should follow the same course as the Supreme Court in *Innovation Law Lab*: this Court should vacate the judgment and injunction and remand the case. *See* Order, *Mayorkas v. Innovation Law Lab*, 19-1212 (June 21, 2021). In addition, even if Plaintiffs' section 1225 claim is not fully mooted by the October 29 memoranda, the Court should vacate that aspect of the injunction as well and remand, so that the section 1225 claim can be decided in the context of the new memorandum and supporting record.

1. When a case becomes moot "while on its way [to the reviewing court] or pending [a] decision on the merits," the "established practice" is to "vacate the judgment below and remand with a direction to dismiss." *Munsingwear*, 340 U.S. at 39. That practice ensures that no party is "prejudiced by a decision which in the statutory scheme was only preliminary," and "prevent[s] a judgment, unreviewable because of mootness, from spawning any legal consequences." *Id.* at 40-41; *see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994) ("If a judgment has become moot [while awaiting review], this Court may not consider its merits,

but may make such disposition of the whole case as justice may require.”) (brackets in original).

Of particular relevance here, the Supreme Court has recognized that vacatur is appropriate where the government has sought review of a lower-court decision but intervening changes in federal law render further review of that decision moot. *See United States v. Microsoft Corp.*, 138 S. Ct. 1186 (2018) (per curiam). Following the Secretary’s June 1 termination of MPP, the Supreme Court in *Innovation Law Lab* ordered vacatur of the district court’s order entering a preliminary injunction against MPP. And *Munsingwear* itself involved a case that “became moot on appeal because the regulations sought to be enforced by the United States were annulled by Executive Order,” *U.S. Bancorp Mortg.*, 513 U.S. at 25 n.3, and the Court indicated that vacatur could have been an appropriate disposition if the United States had sought that remedy. *Munsingwear*, 340 U.S. at 40 (observing that the United States “did not avail itself of the remedy it had to preserve its rights”); *see U.S. Bancorp Mortg.*, 513 U.S. at 25 n.3 (noting “*Munsingwear’*s implicit conclusion that repeal of administration regulations” may provide a basis for vacating a lower court’s decision even when that decision was adverse to the Executive Branch).

2. Vacatur is the appropriate disposition in the circumstances of this case, which are similar to those in *Innovation Law Lab*. As in *Innovation Law Lab*, the district court’s decision in this case entering the now-moot permanent injunction

interprets the INA and APA in ways that could potentially have "legal consequences" in the future if the decision were allowed to remain in place. *Munsingwear*, 340 U.S. at 41; *accord* Order, *Mayorkas v. Innovation Law Lab*, 19-1212 (June 21, 2021). The district court concluded that the Secretary's decision terminating MPP violated the APA, and established a heightened standard for APA review that intrudes upon core Executive authority and agency flexibility. ROA.2952-60. The court also concluded that DHS cannot end MPP without first detaining all applicants for admission—hundreds of thousands of individuals—without releasing any of them based on a lack of detention resources. *Id.* Both conclusions greatly impact the agency's core authorities.

3. The Supreme Court has observed that vacatur may be unwarranted where "the losing party has voluntarily forfeited his legal remedy by the ordinary process of appeal or certiorari." *U.S. Bancorp Mortg.*, 513 U.S. at 25. But as the Court implicitly concluded in vacating the decision in *Innovation Law Lab*, that possible exception to general *Munsingwear* practice has no application here. Order, *Mayorkas v. Innovation Law Lab*, 19-1212 (June 21, 2021).

The Supreme Court's decision in *Board of Regents of the University of Texas System v. New Left Education Project*, 414 U.S. 807 (1973) (per curiam), is likewise instructive. In that case, a state university's appeal of an injunction against the enforcement of two university rules became moot after the university repealed the

challenged rules. *See New Left Educ. Project v. Bd. of Regents of the Univ. of Texas*, 472 F.2d 218, 219-220 (5th Cir.), *rev'd*, 414 U.S. 807 (1973). This Court declined to vacate the district court's judgment because the case had "become moot ... through action of the appellant," *id.* at 221, but the Supreme Court summarily reversed, directing vacatur of the judgment. *See* 414 U.S. at 807. As one leading treatise has explained, vacatur was necessary to ensure that governmental and other parties would not be "deterred" from taking "good faith" actions that would moot a case by "the prospect that," if they do so, "an erroneous district court decision may have untoward consequences in the unforeseen future." *See* 13C Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.10.1 (3d ed. 2016 & Supp. 2021).

The determination whether to vacate a lower-court decision in light of mootness "is an equitable one," that depends on what disposition would be "'most consonant to justice' ... in view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp Mortg.*, 513 U.S. at 24, 29; *see Staley v. Harris Cty., Tex.,* 485 F.3d 305, 310 (5th Cir. 2007) ("vacatur is to be determined on a case-by-case basis, governed by facts and not inflexible rules").

Here, that equitable inquiry calls for vacatur. In no sense does "justice ... require" that DHS continue to utilize a discretionary immigration authority in a manner that the Secretary has determined is contrary to the interests of the United States, merely to allow this appeal to proceed in order to avoid the future legal

consequences of a decision entered by the district court. *Id.* at 21 (citation omitted); *see* 8 U.S.C. § 1225(b)(2)(C) (providing that the Secretary "*may* return [an] alien" to contiguous foreign territory) (emphasis added).

4. Vacatur of the entire decision and order, rather than just the portion of the decision premised on the APA claim, is also warranted. As explained below, the section 1225 claim, like the APA claim, is moot. Moreover, as this Court has explained, where an agency issues a new agency decision impacting the issues on appeal, the challenged action "is no longer final as it does not currently 'mark the consummation of the agency's decisionmaking process' and similarly does not currently determine 'rights or obligations [from which] legal consequences will flow,'"[5] *Shrimpers & Fishermen of the RGV v. United States Army Corps of Engineers*, 849 F. App'x *462 (5th Cir. Mar. 9, 2021) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Likewise, this Court has explained that matters that have been revised by the agency while an appeal is pending are "not yet ripe for judicial review." *La. Power & Light Co. v. Federal Power Comm'n*, 526 F.2d 898, 910 (5th Cir. 1976); *accord New Jersey Bd. of Pub. Utilities v. F.E.R.C.*, 744 F.3d 74, 105 (3d Cir. 2014) ("our review of the old system would merely be advisory").

---

[5] The June 1 memorandum is not final agency action under the APA. Appellants' Br. 28-30, Reply Br. 10-11. However, should the Court disagree, the new memoranda terminating MPP, replacing the vacated memorandum, demonstrate that the June 1 memorandum no longer represents the consummation of the agency's decisionmaking process. *Bennett*, 520 U.S. at 177-78.

Applying these principles here requires vacating the judgment and injunction below in full, rather than just the APA claim. To start, the APA and the statutory claims are intertwined. The district court's APA reasoning rests in part on its conclusion that "DHS failed to consider or acknowledge the effect terminating MPP would have on its compliance with Section 1225," and that by "failing to consider an important aspect of the problem, the Secretary acted arbitrarily and capriciously." ROA.2959-60. But the October 29 memoranda address that very issue, compliance with section 1225, Termination Memorandum 2; Explanatory Memorandum 26-29, and that discussion and record supporting it impact the district court's conclusions concerning section 1225 and the APA. *See, e.g.*, *Nat'l Mining Ass'n v. United States DOI*, 251 F.3d 1007, 1011 (D.C. Cir 2001) ("The old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed. A new system is now in place. We therefore must vacate this aspect of the district court's decision as moot."); *Wyoming*, 414 F.3d at 1212 ("By eliminating the issues upon which this case is based, adoption of the new rule has rendered the appeal moot."); *Ramsey v. Kantor*, 96 F.3d 434, 446 (9th Cir.1996) (similar).

Moreover, the new memorandum requires reassessment of a key portion of the district court's reasoning on the statutory claim. The district court reasoned that DHS "does not have the capacity to meet its detention obligations under Section 1225 because of 'resource constraints,'" ROA.2961, and that DHS may not rely on

"detention capacity" as a basis for case-by-case release under the parole statute. It thus found that, "[u]nder these particular circumstances, where Defendants cannot meet their detention obligations, terminating MPP necessarily leads to the systemic violation of Section 1225 as aliens are released into the United States because Defendants are unable to detain them." ROA.2962. But the memoranda address these issues and articulate the agency's view that it may use its parole authority under 8 U.S.C. § 1182(d)(5) to release noncitizens case-by-case, including, where appropriate, based on limited detention resources. Termination Memorandum 2; Explanatory Memorandum 26-29. That view is correct. And at the least, it construes ambiguous statutory and regulatory text in 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5(b)(5) and is therefore entitled to deference. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) ("*Chevron* deference [applies] to this statutory scheme"); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019) (courts "defer[] to agencies' reasonable readings of genuinely ambiguous regulations"). Whether to afford the agency such deference should occur in the context of a new challenge to the new memorandum, supported by a new administrative record, on remand in the district court, following vacatur of the injunction presently in place.

Finally, even if the new memoranda's discussion of section 1225 does not fully moot the section 1225 claim and is not otherwise entitled to deference, "it is clearly preferable as a general matter to review a set of claims in the context of an

extant rather than a defunct rule …." *Ass'n of Am. Physicians*, 746 F.3d at 473. The new memoranda constitute a new decision and contain new reasoning concerning the section 1225 issues and will be supported by a new administrative record. Concerns of judicial economy and prudential ripeness thus warrant vacatur of this portion of the injunction as well, so that this Court does not expend time and resources on "a problem that" it is unclear "will ever need solving." *Shrimpers*, 849 F. App'x at 463 (collecting cases).

Accordingly, the Court should vacate the decision and order below in full, rather than just the portion of the decision and order premised on the APA claim, and remand.

## II. Alternatively, the Court Should Hold the Appeal Partially in Abeyance as to the Section 1225 Claim and Issue a Partial Remand as to the APA Claim

Should the Court decline to vacate the decision and injunction in full, the Court should hold this appeal partially in abeyance with respect to the section 1225 claim, and partially remand the appeal with instructions that the district court vacate the portion of the decision below premised on the APA and reconsider that claim anew in light of the new memorandum and administrative record.

The Court's authority to hold this appeal in abeyance pending such a partial remand is well settled. *See, e.g.*, *Landis v. North Am. Co.*, 299 U.S. 248, 253 (1936). Matters of judicial economy support holding the section 1225 aspect of this appeal

in abeyance while remanding the APA issue for the district court to address in the first instance.

First, this court is a "court of review, not of first view." *Montano v. Texas*, 867 F.3d 540, 546–47 (5th Cir. 2017) (remanding matter not addressed by the district court for examination in the first instance). "[W]here circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances." *Concerned Citizens of Vicksburg v. Sills*, 567 F.2d 646, 649–50 (5th Cir. 1978). The October 29 memoranda are broader in scope than the June 1 memorandum, addressing additional considerations both highlighted as missing from the June 1 memorandum by the district court and those newly explored by the Secretary. The district court may well conclude that the October 29 memoranda and the supporting administrative record comports with the APA, and such a conclusion would obviate the need to ever consider the APA claims in this appeal. *See Shrimpers*, 849 F. App'x at 462. *see also Concerned Citizens of Vicksburg*, 567 F.2d at 649.

If the district court reaches the opposite conclusion, it would likely hinge on a different rationale, given that the October 29 memoranda are a new decision and are substantively different from the June 1 memorandum in that they address the points the district court previously concluded were absent from the June 1

memorandum. Among other things, the memoranda address the asserted benefits of MPP, consider claims that terminating MPP could lead to a surge in unlawful border crossings, assesses the potential impact on States and whether they have reliance interests in MPP, address more limited approaches than the total termination of MPP, consider the impact on detention obligations and resources, explain how the rate of in absentia removal orders under MPP was atypically high and suggested that meritorious, not meritless, cases were being denied, and detail the determination that even significant changes to MPP cannot resolve some of its inherent flaws. *Compare* ROA.2954-62 *with* Termination Memorandum 1-4; Explanatory Memorandum 1-38. A decision again rejecting DHS's termination of MPP on APA grounds would thus necessarily turn on new reasoning and legal conclusions concerning the new memoranda, and would thus present a different legal finding in any appeal of the issue. In that event, the government's appeal of the district court's new APA determination could be decided at the same time as the section 1225 claim, thus avoiding a piecemeal disposition.

Finally, given the additional facts and circumstances considered by the Secretary's new decision, the administrative record supporting the October 29 memoranda will be different than that reviewed by the district court in its decision enjoining the June 1 memorandum. The district court should address these new issues in the first instance. *See Veasey v. Abbott*, 830 F.3d 216, 241 (5th Cir. 2016)

(“[S]ince there is more than one way to decide this case, and the right court to make those findings is the district court, we must remand.”). “Because the factual basis for the district court’s holding was eliminated” by the October 29 memoranda, the issue should be “remanded for reconsideration in light of the facts as they now stand.” *Concerned Citizens of Vicksburg*, 567 F.2d at 649. To be sure, it is far preferable that this Court vacate the decision below in full and allow the district court to decide this case all at once based on the new termination memorandum, but a partial remand will allow the district court to address the APA claims anew based on the new memorandum and the new administrative record in support.

**CONCLUSION**

Appellants respectfully request that the Court vacate the judgment and permanent injunction and remand this case to the district court. Alternatively, the Court should hold this appeal in abeyance with respect to the section 1225 claim, and remand the appeal with instructions that the district court vacate the portion of the decision below premised on the APA and reconsider that claim anew.

October 29, 2021

Respectfully submitted,

BRIAN M. BOYNTON
*Acting Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*

BRIAN C. WARD

*Senior Litigation Counsel*

JOSEPH A. DARROW
*Trial Attorney*

/s/ Erez Reuveni
EREZ REUVENI
*Assistant Director*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: erez.r.reuveni@usdoj.gov

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,196 words. This motion complies with the typeface and the type style requirements of Fed. R. App. P. 35(a)(5)-(6), and Fifth Cir. R. 32.1 because it has been prepared in a proportionally spaced typeface using Word 14-point Times New Roman typeface.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Erez Reuveni*
EREZ REUVENI
Assistant Director
United States Department of Justice